# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LELA A. SAMARGIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | No. 08-CV-40-SAJ |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## **OPINION AND ORDER**[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Disability Insurance benefits under Title II of the Social Security Act. Plaintiff asserts that the ALJ failed to properly weigh her treating physician's opinion of her limitations in his residual functional capacity ("RFC") assessment. For the reasons set forth below, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this opinion.

## **1. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff, Lela A. Samargis, was born on April 26, 1943, and was 62 years old on June 1, 2005, the date she alleged she became disabled. [R. 85]. She completed four years of college courses in 2002. [R. 114]. Her past relevant work was as an administrative assistant. [R. 111].

Plaintiff's treating physician, Dr. Theresa Loftin, referred her for a thallium treadmill

---

[1] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

test in March 2004, after Plaintiff reported experiencing chest pressure while sitting or exercising. Plaintiff had abnormal results on that stress test. [R. 182]. Dr. Loftin then referred Plaintiff for a heart catheterization study in May 2004, from which Plaintiff was diagnosed with mild coronary artery disease, and elevated left ventricular end-diastolic pressure, consistent with diastolic dysfunction. Plaintiff had 30 percent blockages of her middle right coronary artery and her mid-left anterior descending artery. [R. 180-81].

Plaintiff filed an application for Disability Insurance benefits on February 14, 2006. [R. 85-90]. The Commissioner initially denied her application on June 30, 2006, [R. 47-50] and, on reconsideration, denied it again on October 17, 2006. [R. 57-59]. She then filed a Request for Hearing Before an ALJ on November 6, 2006 [R. 60], and ALJ Lantz McClain held a hearing on June 8, 2007. [*See* R. 27-43]. On August 14, 2007, ALJ McClain concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, from June 1, 2005, through the date of his decision. [R. 21]. Plaintiff then filed a Request for Review of Hearing Decision on September 19, 2007 [R. 8-9], and the Appeals Council denied her request on December 21, 2007. [R. 2-4]. Plaintiff now seeks judicial review.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. § 404.1520. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

2

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[2]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo. Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510 and 404.1572). Step Two requires that the claimant demonstrate that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. § 404.1521. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, the claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that her impairment or the combination of impairments prevents her from performing her past relevant work. A claimant is not disabled if the claimant can perform her past work. If the claimant is unable to perform her previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of her age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[3] as to any fact, if supported by substantial evidence, shall be conclusive, . . ." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### 3. ADMINISTRATIVE LAW JUDGE'S DECISION

In his decision, the ALJ determined that (1) Plaintiff had not engaged in substantial gainful activity at any time relevant to his decision; (2) Plaintiff's impairments, which consisted of coronary artery disease, hypertension, and arthritis, are "severe;" (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) Plaintiff has the residual functional capacity for the full range of sedentary work; and (5) Plaintiff is capable

---

[3] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L No. 103-296. For the purposes of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner".

of performing her past relevant work. [R. 17-21]. Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time from June 1, 2005, through the date of his decision. *Id.*

## 4. REVIEW

Plaintiff alleges that the ALJ erred in failing to properly weigh her treating physician's opinion that Plaintiff could perform less than the full range of sedentary work. If Plaintiff cannot perform the full range of sedentary work, then she could not return to her past work at Step Four; Plaintiff could be found "disabled" pursuant to the Medical-Vocational Guidelines at Rule 201.06 at Step Five. Thus, the ALJ's determination of the weight he accorded the treating physician's opinion may be dispositive of whether Plaintiff should be found disabled.

Dr. Theresa Loftin was Plaintiff's general practice physician since January 2004. [R. 204]. On May 17, 2007, Dr. Loftin completed a form entitled "Physical Residual Functional Capacity Questionnaire" on Plaintiff's capabilities to perform sustained work activity. Dr. Loftin noted Plaintiff's diagnosis of coronary artery disease with 30 percent blockages demonstrated in the heart catheterization procedure, for which Dr. Loftin referred Plaintiff. Dr. Loftin indicated Plaintiff had a "fair" prognosis with her coronary artery disease, which produced symptoms of pain, dizziness, fatigue, nausea and stiffness. Dr. Loftin characterized Plaintiff's chest pain as occurring every day, on an intermittent basis, but increasing with activity, and occurring at a level of severity to "often" interfere with Plaintiff's attention and concentration. Dr. Loftin further noted that Plaintiff tried to limit the number of times she relieved her chest pain with nitroglycerine.

Dr. Loftin assessed Plaintiff as able to sit for two hours at one time and for the entire eight-hour work day. Dr. Loftin indicated Plaintiff could stand for ten minutes at a time, but could stand or walk for less than two hours in a work day. Dr. Loftin further indicated that Plaintiff would need to get up and walk for five minutes at a time, after every 60 minutes during the work day. Dr. Loftin indicated Plaintiff could work at a job in which she could shift positions at will, and that Plaintiff would need to take unscheduled, hourly breaks during the work day, for up to 15 minutes at a time. [R. 209-10].

The ALJ provided several reasons for not giving Dr. Loftin's medical source statement controlling weight. The ALJ first stated that the record did not indicate on what records and objective tests Dr. Loftin based her opinion. However, Dr. Loftin specifically cited the heart catheterization study for which she referred Plaintiff, and the thirty per cent blockage in two arteries, as the basis of her assessment. [R. 208].

The ALJ then reasoned that "given the claimant's allegations, one might expect to see some indication in the treatment records from Dr. Loftin of restrictions placed on the claimant." The ALJ concluded that the record "reveals no restrictions recommended by Dr. Loftin." [R. 20]. However, the Commissioner's regulations and rulings do not impose a requirement that the treating physician's restrictions be presented first in the treatment records before being assessed in a medical source statement. For a treating source's opinion to be given controlling weight, the opinion must be "well-supported" by "medically acceptable" clinical and diagnostic techniques, and be "not inconsistent" with other substantial evidence in the record.. *Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p, 1996 WL 374188 at *2 (S.S.A. July 2, 1996). The ALJ did not demonstrate that he followed the requirements

6

of SSR 96-2p, as he did not discuss whether he found Dr. Loftin's opinion to be "well-supported" by, and "not inconsistent" with, substantial evidence in the record.

The ALJ next stated that treating physician opinions on issues reserved to the Commissioner cannot be given "controlling weight," pursuant to Social Security Ruling 96-5p. The ALJ did not identify what part of Dr. Loftin's opinion addressed "issues reserved to the Commissioner" that could not be given "controlling weight." The ALJ must provide "specific reasons for the weight given to the treating source's medical opinion, [that are] supported by the evidence in the case record." SSR 96-2p, 1996 WL 374188 at *5. Without the ALJ's specific identification of the parts of Dr. Loftin's opinion that he found to address issues "reserved to the Commissioner," the Court cannot assess whether the ALJ applied the correct legal analysis to determine if this was a valid reason for not giving controlling weight to Dr. Loftin's opinion.

The ALJ concluded that Dr. Loftin's opinion "cannot be given controlling weight because it is in conflict and inconsistent with Dr. Loftin's own treatment records and the other substantial evidence as noted above." [R. 20]. The ALJ did not identify the specific conflicts and inconsistencies he found between Dr. Loftin's opinion, her own treatment notes, and other "substantial evidence" in the record. When the ALJ fails to "explain or identify what the claimed inconsistencies were between [the treating physician's] opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). Here, as in *Langley*, "[w]ithout further clarification, the reason given by the ALJ for not giving [Dr. Loftin's] opinion controlling weight does not appear to have been supported by the record." *Id.*

Further, whether to give a treating physician's opinion controlling weight is not an "all-or-nothing" proposition. SSR 96-2p explains,

> It is not unusual for a single treating source to provide medical opinions about several issues; for example, at least one diagnosis, a prognosis, and an opinion of what the individual can still do. . . .[The ALJ] must always be aware that one or more of the opinions may be controlling while others may not. Adjudicators must use judgment based on the facts of each case in determining whether, and the extent to which, it is necessary to address separately each medical opinion for a single source.

1996 WL 374188 at *2. Within her medical source statement, Dr. Loftin gave several distinct opinions about Plaintiff's ability to perform certain functions during the work day, and whether she could perform those functions on a sustained basis. However, the ALJ did not address Plaintiff's ability to perform separate functions, as provided in Dr. Loftin's opinion. The ALJ did not consider whether he could give controlling weight to some of Dr. Loftin's opinions on specific functions, even if he could not give such weight to all of Dr. Loftin's assessment of capabilities.

Plaintiff argues that, even if the ALJ did not err in failing to give Dr. Loftin's opinion controlling weight, the ALJ was still required to give that opinion deference, and evaluate what lesser amount of weight Dr. Loftin's opinion was entitled to receive based on the factors the Commissioner identifies at 20 C.F.R. §404.1527(d). The Commissioner responds by asserting that the ALJ did not give any weight at all to Dr. Loftin's opinion. Def.'s Resp. Br. at 6.

The Tenth Circuit requires that "if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). In *Watkins*, the Tenth Circuit found the ALJ "failed to articulate the weight, if any, he gave [the treating physician's] opinion, and he failed to also explain the

reasons for assigning that weight or for rejecting the opinion altogether."  Remand was required, "because we cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion." *Id.*

The ALJ here similarly erred in failing to identify what weight, (if any) he gave to Dr. Loftin's opinion, and in failing to provide specific factual findings to support his apparent rejection of Dr. Loftin's opinion about Plaintiff's ability to perform less than sedentary level of work activity.  The ALJ did not follow the analysis the Commissioner requires for the evaluation of treating source opinions from SSR 96-2p.  Because Dr. Loftin's opinion that Plaintiff could not  perform the full range of sedentary work may be dispositive of Plaintiff's ability to perform her past work at Step Four, and other work at Step Five, the ALJ's failure to apply the correct legal standards to evaluate that treating physician's opinion requires that his decision be reversed and remanded for further administrative proceedings, consistent with this Order.

IT IS SO ORDERED this 30th day of December, 2008.

Sam A. Joyner
United States Magistrate Judge